DENNIS O'CONNELL, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. In order to convict the prisoner of receiving stolen goods knowing them to be stolen, the larceny of the goods and their ownership must both be proven, with reasonable certainty, as alleged in the indictment.

2. In accounting for the possession of the goods the prisoner, after proving that they were purchased and received in his absence by an agent, may show, as a part of the *res gestæ*, what was said to such agent by the seller in respect to the title or ownership, at the time of the agent's purchase.

Criminal law. Receiving stolen goods. Evidence. *Res gestæ.* Before Judge BARTLETT. Chatham Superior Court. February Term, 1875.

O'Connell was placed on trial for the offense of simple larceny. The indictment also contained a count for buying and receiving stolen goods, knowing them to have been stolen. The property thus charged to have been taken, and bought and received, consisted of old iron, railroad chairs, etc., alleged to belong to the Central Railroad and Banking Company. The defendant pleaded not guilty. The jury found him "guilty of receiving stolen goods, knowing them to have been stolen." The defendant moved for a new trial because the verdict was contrary to the evidence, and because the court refused to allow the defendant to show what was said to his agent as to the ownership of the property by the seller, at the time of the purchase, he having introduced testimony to show that the goods were purchased and received in his absence by his agent.

The motion was overruled, and the defendant excepted.

O'Connell *vs.* The State of Georgia.

Rufus E. Lester; M. J. O'Donoghue, for plaintiff in error.

W. G. Charlton, solicitor general *pro tem.*, for the state.

Bleckley, Judge.

1. The important question made by the motion for new trial, is whether there was evidence enough to convict. The railroad iron, spikes, chairs, brasses, etc., were alleged in the indictment to be the property of the Central railroad and Banking Company, and to have been stolen by a person unknown, and afterwards received by the prisoner, he knowing them to be stolen. All these points were material: 2 Bishop's Cr. Law, section 953; 2 Bishop's Cr. Procedure, section 707; 4 *Georgia Reports*, 465; Roscoe's Cr. Ev., sections 875-6. As the evidence comes to us in the record, it seems to us too vague and uncertain to establish ownership of the property in the Central Railroad and Banking Company, or that it was ever stolen from that company. Some of it was marked " C. R. R."; but how marked and by whom? It is not explained whether the marks were indented in the iron or raised upon the surface, or put on in ink, paint or penciling. What is meant by marking with the Central Railroad pattern? We cannot perceive that any of this property was clearly shown to have ever been in the possession of the company. If it was, where was it, and what agent had the custody of it? One witness swears the company lost iron in the year 1872, but how was it lost, and where from, and what kind, and how much? Why did not the railroad employees who testified in the case speak more definitely? We think there is more in this case than has been developed, and that there is no reason why the witnesses should not be more carefully sifted. It is altogether probable that they know enough to identify the property, prove ownership, and make out a larceny, but the difficulty is they did not go into the case thoroughly, or else their evidence, as delivered on the stand, has not been properly briefed and brought up. We must act

upon it as we find it, and so doing, we pronounce it fatally deficient.

2. According to evidence adduced in behalf of the prisoner, some of the iron was purchased by his agent, and received in his absence. It was proposed to prove what the person who sold it to the agent said as to title in making sale to the agent. That was competent evidence. It was a part of the *res gestœ.* There was no proof that the particular iron involved in that transaction was received by the prisoner otherwise than through this agent. If he ratified the agent's act what did he ratify? To ascertain that, all evidence is relevant that goes to characterize the act. What was said at the time may be true or false, but still, the fact that it was said was a part of what transpired, and tends to illustrate the transaction. The evidence may be worth very little when it is in, but nevertheless, being relevant, it is admissible.

We grant the new trial on the former ground. Let the case be tried over on fuller testimony, if it is to be had.

Judgment reversed.