## STATE v. JACK FLEISHER.[1]

### July 11, 1924.

### No. 24,009.

**Larceny—when declarations of seller of goods are admissible.**
> When the only proof of the guilt of a person indicted upon a charge of larceny is possession of the stolen goods, and an alleged purchase of the goods is offered to explain such possession, the accused should be allowed to testify to the declarations of the seller made at the time of the alleged sale.  Such declarations are verbal parts of the transaction and characterize the possession of the goods.

The county attorney for Wright county filed an information charging defendant and another with the crime of grand larceny in the first degree.  Defendant was tried separately in the district court for that county before Giddings, J., and a jury which found him guilty of larceny in the second degree.  From the judgment entered pursuant to the verdict, defendant appealed.  Reversed.

*A. M. Cary, Philip Bessler* and *N. Rivkin,* for appellant.

*Clifford L. Hilton,* Attorney General, *Raymond C. Alley,* County Attorney, and *J. T. Alley,* for respondent.

LEES, C.
Defendant and one Max Rubin were charged in an indictment with having stolen, on May 16, 1923, men's clothing of the value of $2,250, the property of Mealey & Strout, proprietors of a general store at

[1]Reported in 199 N. W. 576.

Monticello in Wright county. Defendant has appealed from the judgment rendered upon the verdict of the jury finding him guilty of grand larceny in the second degree.

The state's case rests upon circumstantial evidence. The larceny of the goods is not disputed and neither is there any dispute as to their value. It is in evidence that on May 20, four days after the goods were stolen, defendant had possession of a number of suits of clothing and offered them for sale to a Minneapolis pawnbroker. Subsequently this man and his partner purchased the suits and they were delivered at their store by the defendant some time in June. Later they made a second purchase from him. While the suits were in their possession, they were identified by Mr. Mealey and one of his salesmen. Inquiry being made as to how they were obtained, the pawnbrokers said they had purchased them from the defendant. He was taken into custody and questioned at police headquarters. Asked whether he had sold the clothing to the pawnbrokers, he answered in the negative, but when confronted by one of them he admitted that he had made the sales. This was the foundation of the state's case. In short, it relied entirely on the proof of defendant's possession of the recently stolen goods in asking for his conviction, offering no proof that he had actually stolen them, or that he had any hand in the theft.

Testifying in his own behalf, defendant attempted to explain his possession of the goods. He said that he received a telephone call from a man named Jurane, who was the proprietor of a small shoe store in Minneapolis, asking him to come to his store; that he went and was told by Jurane that two men had been looking for a purchaser of men's suits. He was then asked to give the conversation he had with Jurane. The state objected and the objection was sustained. Continuing his testimony, defendant said that he went back to Jurane's store a second time and found two men there whom he had never seen before and that he had a talk with them about the clothing. He was then asked this question: "What did these men say to you about the goods?" An objection was interposed on the ground that the question called for hearsay evidence. In ruling upon the objection the court said:

"He may testify to anything these men said to him as to the kind of goods, the quality of the goods, the number of suits, and that trade talk or dicker. There is no objection to that, but he cannot testify as to what these men told him as to where they got the goods."

Continuing, the court said:

"If you want to show he bought the goods from these two men, you have a perfect right to show that. * * * The court simply ruled that he could not testify as to what these men told him as to where they got the goods. That would not be admissible because it is clearly hearsay."

Defendant excepted and offered to prove the entire conversation he had with the men from whom the goods were purchased relative to where the goods were and from whom they had been received, as bearing on their right of possession. The offer was excluded and the defendant excepted. By reason of these rulings, defendant's testimony was limited to an account of where he went with the men to examine the goods; the manner in which the goods were packed; the price asked and the price offered; the number of suits he examined and the number he purchased and the sum paid for them.

In his closing argument to the jury the prosecuting attorney said:

"So, I say, one of the issues is simply this, did the defendant, Jack Fleisher, get possession of the goods, of this clothing in the manner in which he says he did, or did he get possession—did he get the goods as a principal in the commission of this crime. It can be narrowed down to that. If there was any explanation, if there was any way of explaining how Jack Fleisher got possession of these goods that explanation would be here, that explanation would be before you, that explanation would be produced by the defendant, Jack Fleisher. So, I say, the question is narrowed right down to this: Did the defendant, Jack Fleisher, tell you the truth as to how he got possession of these goods? That is one of the points you have to pass upon. * * * He says he got the goods from two men, two strangers that he met on Washington avenue some place, men that he had never seen before. He does not tell us where those

men came from and he does not tell us where they went. Do you believe he told you the truth when he told you he got this clothing from these two men?"

Counsel for the defendant objected and excepted to this statement. The ruling of the court relative to proof of the defendant's conversation with the men from whom the alleged purchase of the goods was made, and its prejudicial effect in view of the line of argument of counsel for the state, are the principal questions presented by the assignments of error.

In a line of cases beginning with State v. Hoshaw, 89 Minn. 307, 94 N. W. 873, and ending with State v. Moen, 155 Minn. 496, 192 N. W. 936, this court has held that the unexplained possession and control of recently stolen property is evidence of guilt sufficient to justify a conviction of the person so in possession upon a charge of larceny.

The writers have this to say with respect to the legal effect of evidence establishing such possession:

"The inference from the fact of possession will be stronger or weaker, according as the possession was not or was in good faith; if a possession in good faith can be made to appear, the inference that the possessor was himself the robber or the thief or the knowing receiver can hardly be strong. Thus, the total significance of the act of possession becomes material; and upon the principle of verbal acts, the utterances of the person while in possession may be received  *  *  *  as explanatory of possession, though not as hearsay assertions to evidence the fact asserted." 3 Wigmore, Ev. § 1781.

"Though it is hardly accurate to say that the burden of explaining the possession of stolen property is upon the accused, yet he must offer some reasonable and probable explanation. It is reversible error not to permit him to do so, or to reject any relevant evidence tending to produce that result.  *  *  *  It is not absolutely requisite that the accused should prove that his possession was honest. It is sufficient to acquit him if he gives a natural, reasonable and probable explanation of how he acquired possession.

\* \* \* If the explanation is absurd, unreasonable or unsatisfactory, it is the right of the jury, and often their duty, to disregard it, though no evidence in rebuttal on that point is offered." Underhill, Crim. Ev. § 470.

"On a charge of larceny, it is relevant for accused to show that he purchased the property, and, in explaining the possession of stolen goods, he may prove from whom he got them, and what the parties said at the time." · 2 Wharton, Crim. Ev. p. 1830.

When a person is charged with unlawfully receiving stolen goods, it is generally held that the conversation between the accused and the person from whom he received the goods, if had at the time possession was obtained, is admissible as part of the res gestae. People v. Dowling, 84 N. Y. 478; State v. Simon, 70 N. J. Law, 407, 57 Atl. 1016; O'Connell v. State, 55 Ga. 296; State v. Bethel, 97 N. C. 459, 1 S. E. 551. On the same principle it has been held that, when the person in possession is charged with stealing the goods, he may testify to statements made to him by the person from whom he received them at the time of their delivery. Leggett v. State, 15 Ohio, 283; State v. Kelly, 57 Iowa, 644, 11 N. W. 635; State v. Jordan, 69 Iowa, 506, 29 N. W. 430. The principle upon which such evidence is received is well stated in Wiggin v. Plumer, 31 N. H. 251.

"When a fact is offered in evidence, the whole transaction, if it consists of many particulars, may and ought to be proved. Every additional circumstance proved may vary the effect of the evidence, may neutralize it, or give it point. What is then said by the parties, and what is said by others to them, relative to the subject of the transaction, is a part of the transaction itself. It is admissible on the same principle that every other part of it is, that the whole matter may be seen by the jury."

The declarations of the person from whom the defendant bought the goods, made at the time of the alleged purchase, give character to and throw light on the contemporaneous acts of the defendant. Inasmuch as the jury has a right to infer guilt from the mere fact that the goods recently stolen were found in his possession, he should be allowed to make a full and complete explanation to over-

come the unfavorable inference and to have his explanation go to the jury for whatever it may be worth. We think the rule should be the same whether the charge is knowingly receiving stolen property or the actual theft of the property. In either case the defendant is called upon to explain the character of his possession in order to show, if he can, that it is honest. Every circumstance attending the receipt of the property gives color to the character of the defendant's possession and bears upon the inferences which may be drawn therefrom. The state should not be allowed to stress the unfavorable inference which arises from unexplained possession and at the same time close the defendant's mouth when he attempts to tell the jury all that was said and done when he acquired possession. What he was told by the person from whom he received the property is not hearsay, but a part of the transaction and as much a fact as the physical delivery of the property. See Wigmore, Ev. § 1788. The words then uttered are part of the explanation of possession and are equally important to characterize possession whether they relate to the terms of the alleged sale or to the nature of the seller's title or right of possession.

The rule that the admissibility of declarations accompanying the principal fact is largely a matter for the determination of the trial court, in accordance with the degree of their relation to that fact, is not always a complete answer to the contention that the substantial rights of the accused were not prejudiced by the exclusion of testimony as to such declarations. In the case at bar, counsel for the state, in summing up before the jury, made a pointed attack upon defendant's explanation of his possession. He had succeeded in having a portion of the explanation excluded and then insisted that the partial explanation defendant had been allowed to give was unworthy of belief. This could not be otherwise than prejudicial. For these reasons there must be a new trial, and it is so ordered.